## Philiskey E. Stanley, for the use of James A. Brophy, v. Samuel P. McConnell.

1.  PRACTICE—*Trial by Court—No Propositions of Law Submitted.*—Where a cause is submitted to the court for trial without a jury, and no propositions of law are submitted, the only questions which can be reviewed by the Appellate Court are questions of fact.

2.  AGENTS—*Excess of Authority.*—Permitting property to go to sale for taxes and to buy it in at such sale, is a manifest departure from an authority given to pay taxes.

3.  JUDGMENTS—*Upon Questions of Fact.*—The finding of a trial court upon a bare question of fact, will not, upon appeal, be disturbed when the evidence is conflicting, unless for reasons which would be sufficient to justify the overturning of the verdict of a jury.

Assumpsit, for money paid out and advanced. Appeal from the Superior Court of Cook County; the Hon. HENRY V. FREEMAN, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 11, 1896.

OLIVER & MECARTNEY, attorneys for appellant.

JAMES H. WILKERSON, attorney for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was an action to recover a balance of $362.72 claimed to be due to appellant for moneys paid out and advanced at appellee's request for certificates of tax sales, commissions and carrying charges, in connection with certain of appellee's real estate.

The cause was submitted to the court without a jury, and resulted in finding the issues in favor of the appellee, the defendant below.

No propositions of law were submitted to the court, and the only questions there decided, or here to be reviewed, were ones of fact.

The appellant, Stanley, was, at the time in question, collecting rents for the appellee, and the particular controversy between them arose out of the giving by appellee of the following order:

"CHICAGO, ILL., Aug. 27, 1889.
Messrs. P. E. Stanley & Co.

GENTLEMEN : Please pay the taxes for me on the following pieces of real estate : Lot 67, Culver's Add. to Chicago, $60.21; lot 4, block eleven (11), Duncan's Add., $227.93; lot 1, Superior Court Commissioners' Sub. of S. one-half of the N. two-thirds of that part of block 95, north of south thirty-three feet thereof, Canal Trustees' Sub. of W. one-half of Sec. 27, 39, $172.10. This last piece of property is the one you leased for me.

Very truly,

S. P. McCONNELL."

Concerning the authority so conferred, and what was done thereunder, the appellant, Stanley, testified : " Under this order I bought the taxes in the name of James A. Brophy. I mean by that, that I bid this property off at tax sale. The certificates came into the office, were paid for and money borrowed on them. I advanced the money and paid for the certificates. * * * The firm of which I was a member was, at that time, collecting rents and handling property for Judge McConnell. * * * I subsequently made a present of the tax business which was conducted by me to James A. Brophy. I turned over absolutely all interest in the tax business to Mr. Brophy. I do not claim any interest whatever in any of these purchases made prior to turning it over to Mr. Brophy. About the fall of 1889, or spring of 1890, I turned it over to Brophy. The money advanced on these sales was turned over along with the other. It was a car-

rying account in the office. The money was borrowed on that, with others, and I turned it over to Brophy. * * * Subsequently I called on Judge McConnell about this bill, and tried to collect it—probably about six months after the time of the purchase. He was too hard up to pay it. * * * I went there in the interest of the legal holder of that security, or whatever you call it, to collect it. * * * I told him the amount due. I don't remember the amount due at that time. The amount due now is about $362. He said he would pay it as soon as he could. * * * I went in the interest of the legal holder of the indebtedness, who was William H. Burnet. I borrowed the money of him to advance to pay for the taxes of Judge McConnell, and he held the tax certificates at that time. * * *

The money has never been repaid to Burnet yet. The order introduced in evidence is the order upon which I acted. That was the written instructions he gave me after I had made arrangements to buy his taxes at tax sale and protect him."

It was testified by one who was bookkeeper for Brophy, and by another who was clerk for both Stanley and Brophy, that they severally presented the account to appellee on repeated occasions, and asked for its payment, and that appellee on various grounds excused himself, but never objected to its correctness.

The clerk also testified that he left a copy of the account with appellee, and that on one occasion appellee offered to pay him $100 to apply on it, but that he, the witness, declined to accept part payment for lack of authority to do so.

On the other hand, the appellee denied having at any time, in any manner authorized Stanley to permit the property to go to sale and buy it in, and denied any knowledge that such a course had been adopted by Stanley until long afterward, when, having made a sale of one of the pieces of property, he first discovered the method that had been pursued by Stanley, and he testified that he then promptly repudiated the action and disavowed Stanley's authority to

do so. He admitted that he did at one time offer to pay $100 to the clerk who presented the bill to him, in settlement of the controversy, but that the offer was declined, and such was probably the true scope of the offer he made, for it is unreasonable to suppose that one having authority to collect an account should refuse to accept $100 to apply on it, especially where, as here, there had been credited on the account other partial payments by way of rents collected, etc.

It was also shown by appellee that Brophy had served upon appellee the usual notices that the property had been sold for taxes, and of the time of the expiration of the right to redeem therefrom.

We need hardly say that permitting the property to go to sale and buying it in at such sale, was a manifest departure from the authority given to pay the taxes. It may have been a convenient method of enabling Stanley to procure money to keep the property from being sold to strangers, who would hold the tax certificates of sale adversely to appellee, but it was of course wholly unwarranted by the authority to pay the taxes.

True there is a possible intimation, at the close of Stanley's testimony, that previous to the written instructions above quoted, there was an arrangement between himself and appellee that he should buy the property at the tax sale, but it is very vague, and is not corroborated by anything else in the record, and if it were true, the rule would probably require it to be held that any such prior arrangement was merged in the subsequent writing, under which, admittedly, Stanley acted.

The proposition of appellant, that because appellee redeemed the piece of property sold by him from the tax sale, which redemption money was received by Brophy and credited on appellee's account, the appellee thereby accepted the fruits of the transaction done by Stanley and ratified it, is without much foundation. Appellee has apparently accepted the situation as best he may, leaving to appellant whatever remedies he may have under his tax purchase, and

taking his own course to be relieved from the effect of such purchase whenever the situation may confront him. The appellant can hardly say that by appellee redeeming from the sale, and thereby making it possible for the appellant to get back his money, the appellee in effect ratified the tax sale and appellant's proceedings with reference to it.

The final point, that an account stated was proved, comes closer to being well taken. By force of mere numbers of witnesses, the preponderance might be said to be in favor of appellant.

But it is a long established and statutory rule that the finding of the trial court upon a bare question of fact will not, upon appeal, be disturbed when the evidence is conflicting, except for reasons sufficient to justify the overturning of the verdict of a jury.

There appears to be no sufficient error in the record to warrant us in disturbing the judgment of the Superior Court, and it will accordingly be affirmed.